UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER JAMES
ZARAGOZA,

      Plaintiff,

v.                          Case No.:  8:21-cv-4-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Christopher James Zaragoza seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on February 3, 2017, alleging disability beginning February 2, 2016. (Tr. 121, 299-300). The application was denied initially on March 17, 2017, and on reconsideration on May 4, 2017. (Tr. 121, 138). Plaintiff requested a hearing and on September 25, 2018, a hearing was held before Administrative Law Judge James Alderisio ("ALJ"). (Tr. 75-106). On January 10, 2019, the ALJ entered a decision finding Plaintiff not disabled from February 2, 2016, through the date of the decision. (Tr. 144-153). On June 27, 2019, the Appeals Council remanded the case to the ALJ. (Tr. 160-61). The Appeals Council determined that even though Plaintiff had submitted short-term disability records to the ALJ, the records were not included on the List of Exhibits attached to the hearing decision even after the ALJ expressed a willingness to accept them. (Tr. 160). On remand, the Appeals Council required the ALJ to address the short-term disability benefits, allow Plaintiff an opportunity for a hearing, take any further action needed, and issue a new decision. (Tr. 160-61).

On remand, the ALJ held a second hearing on February 27, 2020. (Tr. 54-73). On April 28, 2020, the ALJ entered a decision finding Plaintiff not under a disability from February 2, 2016, through the date of the decision. (Tr. 16-26). Plaintiff requested review of the hearing decision, but on November 2, 2020, the Appeals Council denied Plaintiff's request. (Tr. 1-6). Plaintiff initiated the instant action by

Complaint (Doc. 1) filed on January 4, 2021, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 18).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 2, 2016, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "systemic lupus erythematosus (SLE), diabetes mellitus, irritable bowel syndrome (IBS), degenerative disc disease (DDD) of the cervical spine, arthritis, and obesity" (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 §§ C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. 21).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that the claimant must avoid hazardous machinery and vibration." (Tr. 21). At step four, the ALJ found that Plaintiff was capable of

performing past relevant work as a customer service representative, sales representative, support analyst, and manager of a retail store. (Tr. 24). The ALJ determined that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 24-25). The ALJ concluded that Plaintiff had not been under a disability from February 2, 2016, through the date of the decision. (Tr. 26).

## II.    Analysis

On appeal, Plaintiff raises the following three issues: (1) whether the ALJ properly evaluated treating physician Dr. Capone's opinion; (2) whether the ALJ erred by not considering LMHC Pendleton's treatment record;[1] and (3) whether the Appeals Council erred in denying Plaintiff's request for review despite the proffer of additional evidence.[2] (Doc. 23, p. 23, 31, 41).

### A.    Dr. Capone's Opinion

Plaintiff argues that the ALJ did not provide sufficient reasons to afford little weight to Edward Capone, D.O.'s opinion. (Doc. 23, p. 25). The Commissioner

---

[1] The Commissioner objected to Plaintiff's framing of this issue and asserts that the issue should be, "whether substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were non-severe." (Doc. 23, p. 31 n.12). The Court will address both parties' arguments in the Opinion and Order.

[2] The Commissioner again objected to Plaintiff's framing of this issue. The Court reframed it to reflect the issue that was raised.

responds that the ALJ gave at leave one proper reason supported by substantial evidence for giving Dr. Capone's opinion little weight. (Doc. 23, p. 28).

At step four, an ALJ must properly consider treating, examining, and non-examining physician's opinions and weigh these opinions and findings as an integral part of the ALJ's RFC determination. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). Whenever a physician offers an opinion concerning the nature and severity of a claimant's impairments—including the claimant's symptoms, diagnosis, and prognosis; physical and mental restrictions; or what the claimant can still do—the ALJ must state with particularity the weight given to the opinion and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such an explanation, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart*, 662 F.2d at 735).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

On February 3, 2017, Dr. Capone examined Plaintiff. (Tr. 563-64). He assessed Plaintiff with: (1) systemic lupus erythematosus with glomerular disease, unspecified SLE type; and (2) degenerative joint disease, cervical. (Tr. 563). Plaintiff denied fatigue, denied abdominal pain, denied diarrhea, denied constipation, denied nausea, denied neck pain, denied back pain, denied joint pain, and denied weakness. (Tr. 564). Dr. Capone found Plaintiff had normal range of motions for all joints, no swelling or deformity, and no effusions. (Tr. 563).

On the same date, Dr. Capone completed a form for an insurance disability claim for Plaintiff. (Tr. 439-42). In this form, Dr. Capone found that Plaintiff was "unable to concentrate, multitask and help customers due to chronic pain and frequent gastrointestinal problems" and would not be able to perform these job functions. (Tr. 439, 441). Dr. Capone also determined Plaintiff had exertional and other limitations as enumerated by the ALJ below. (Tr. 440). He further found that "flare ups will make any activity difficult to perform due to pain/nausea." (Tr. 442). Dr. Capone completed a different form on October 5, 2017, for Plaintiff to qualify for subsidized childcare. (Tr. 445). In this form, Dr. Capone found Plaintiff permanently disabled based on his diagnosis of lupus and degenerative spine disease. (Tr. 445). He wrote, "Patient is unable to work and is going through disability process." (Tr. 445). Dr. Capone also found that Plaintiff needed assistance with childcare because he was in constant pain and watching his children caused pain, he had fatigue, and he was unable to provide the attention and care needed for his children. (Tr. 445).

In the decision, the ALJ discussed Dr. Capone's opinion:

> As noted above, Dr. Capone opined in February 2017 that the claimant was unable to perform functions of his job related to concentration, multitasking, and customer service due to his fatigue secondary to lupus. He further opined that the claimant could only occasionally climb, crawl, kneel, lift, pull, push, reach, carry, bend, or twist. In addition, he opined that the claimant could frequently grasp, perform repetitive motion, and perform gross manipulation, but could occasionally

perform fine manipulation and could occasionally stand, stoop, and walk. He further opined that the claimant could occasionally lift up to 35 pounds and frequently lift up to five pounds and would require scheduled absences from work once every two months for follow up treatment (Exhibit 19E). The undersigned afforded this opinion little weight because it is contrary to the medical evidence. As noted above, the claimant's physical examination[s] routinely show intact findings for range of motion, muscle strength, gait, sensation, reflexes, and motor function. In addition, the claimant testified at the subsequent hearing that he was not receiving any treatment. Therefore, given the lack of corroborative clinical abnormalities, the undersigned finds that this opinion is both unsupported and inconsistent with the medical evidence of record. Dr. Capone subsequently confirmed in October 2017 that the claimant was "permanently disabled" (Exhibit 19E). This latter opinion was afforded little weight because it is conclusory and addresses an issue reserved to the Commissioner. Moreover, it is contrary to the medical evidence, which shows mostly normal physical examination findings as discussed above.

(Tr. 24).

Substantial evidence supports the ALJ's decision to afford Dr. Capone's opinion little weight. First, the ALJ found that the opinion is contrary to the medical evidence. (Tr. 24). The ALJ noted that Plaintiff's physical examinations routinely show normal range of motion, muscle strength, gait, sensation, reflexes, and motor function. (Tr. 24). Indeed, Dr. Capone's own treatment record was contrary to his opinion. In his treatment note, he found Plaintiff denied fatigue, pain, and gastrointestinal difficulties. (Tr. 564). On examination, he noted that Plaintiff had a normal range of motion in all joints, no swelling or deformity, and no effusions. (Tr. 563). Basically, Dr. Capone's examination of Plaintiff was generally normal. (Tr.

563-566). But in his opinion, he found Plaintiff to have chronic pain and frequent gastrointestinal problems, and many exertional and other limitations. (Tr. 439-40). Dr. Capone did not explain how he reached this opinion given his generally normal examination findings. (Tr. 439). The ALJ properly discounted Dr. Capone's opinion because it was not supported by his own treatment note.

Plaintiff also cites various records that include some abnormal findings. (Doc. 23, p. 26-27). The issue is not whether the ALJ could have relied on other evidence in assigning weight to Dr. Capone's opinion, but whether substantial evidence in the record supports the ALJ's finding. *Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 147 (11th Cir. 2021) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Here, the ALJ considered Dr. Capone's entire opinion and determined that it was contrary to the medical evidence. (Tr. 24). The ALJ found Plaintiff's medical examinations – including the one conducted by Dr. Capone – showed routinely intact range of motion, muscle strength, gait, sensation, reflexes, and motor function. (Tr. 24, 486-87, 495, 509, 519-20, 563). These findings are supported by the treatment notes. Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v.*

*Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Here, substantial evidence supports the ALJ's decision and thus the ALJ did not err in affording little weight to Dr. Capone's opinion.[3]

One final note – in the October 2017 form for subsidized childcare, Dr. Capone checked a box that Plaintiff was permanently disabled. (Tr. 445). Dr. Capone explained that Plaintiff was diagnosed with lupus and degenerative spine disease, was unable to work, and was going through the disability process. (Tr. 445). The ALJ afforded little weight to this opinion because it was conclusory and an issue reserved to the Commissioner. (Tr. 24). Dr. Capone's statement that Plaintiff is disabled is conclusory and the explanation provided little support for such a finding. Moreover, a medical source's determination that an individual is permanently disabled "is not dispositive of a disability claim because the determination is reserved to the administrative law judge acting on behalf of the Commissioner." *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021). For these reasons, the ALJ did not err in affording little weight to this opinion.

---

[3] The ALJ also mentioned that at the hearing, Plaintiff testified that he was not receiving any treatment. (Tr. 24). Plaintiff explained that he lost his insurance and was unable to afford additional medical treatment. (Doc. 23, p. 25-26). In affording little weight to Dr. Capone's opinion, the ALJ focused on the opinion being contrary to the medical records in evidence, which showed generally normal examination findings. (Tr. 24). The Court finds this reason sufficient to determine the ALJ's decision as to this issue was supported by substantial evidence.

### B.     LMHC Pendleton's Treatment Record

Plaintiff next argues that the ALJ erred in failing to consider Licensed Mental Health Counselor ("LMHC") Terri Pendleton's assessment. (Doc. 23, p. 33). And Plaintiff points out that when discussing the four broad areas of mental functioning at step two, the ALJ specifically stated that "[n]otably, the claimant sought no mental health therapy during the period at issue." (Tr. 20). The Commissioner claims that this misstatement was harmless error. (Doc. 23, p. 37). The Commissioner argues that a licensed mental health counselor is not an acceptable medical source and thus could not provide an opinion. (Doc. 23, p. 39). The Commissioner also argues that Pendleton did not describe any work limitations for Plaintiff and thus there were no opinions to consider. (Doc. 23, p. 40).

Pendleton's record reflects that she met with Plaintiff on February 6, 2020. (Tr. 801). Plaintiff presented with cognitive functioning as oriented/alert, mood as depressed, functional status as intact, affect as blunted, and interpersonal as interactive. (Tr. 801). Pendleton diagnosed Plaintiff with depressive disorder due to another medical condition, with major depressive-life episode. (Tr. 801). Plaintiff reported a history of violence in childhood, and reported he angered easily, yelled, threw things, exploded, and agitated easily. (Tr. 801). He claimed not to respect authority and challenged his bosses, while being resistant to feedback. (Tr. 801). He thought he was smarter than everyone else and was very arrogant and flippant. (Tr.

801). He also reported a history of cutting and self-harm. (Tr. 801). He further reported that he felt out of control and in constant pain. (Tr. 801). Most days he claimed to stay in bed and was sad, depressed, and experienced no joy in his life. (Tr. 801). He reported disturbed sleep, never felt rested, no appetite, and had financial stress. (Tr. 801). Pendleton used interventions of exploration of coping patterns, exploration of emotions, and exploration of relationship patterns. (Tr. 801). She included no treatment plan progress. (Tr. 801).

Under the regulations, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairments(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). While Plaintiff contends that the ALJ erred in failing to consider Pendleton's opinion, the February 2020 treatment note does not constitute a "medical opinion" because it is not a statement from an acceptable medical source, such as a physician or psychologist. Because Pendleton was a licensed mental health counselor, she was not an "acceptable medical source" and she could not establish the existence of a medically determinable impairment. *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 783 (11th Cir. 2016). Instead, Pendleton was categorized as an "other medical source." *Id.* "Thus, the ALJ was not required to assign and explain the weight given to that evidence." *McMahon*, 583 F. App'x at 892. And

while the ALJ must address medical opinions, he is not required to address every piece of evidence in the record. *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005) ("stating that 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision'"); and *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981) ("noting that the ALJ should sufficiently explain the weight given to 'obviously probative' evidence")).

An ALJ "may" consider evidence from licensed mental health counselors in determining the severity (but not the existence) of a medically determinable impairment and how an impairment affects an individual's ability to function. *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 (11th Cir. 2020); SSR 06-3p.[4] Here, Pendleton did not provide an opinion as to the severity of Plaintiff's medically determinable impairments nor how his mental impairments affect his ability to function. Pendleton's February 2020 progress note simply includes a diagnosis (which cannot be used to establish a medically determinable impairment because Pendleton is an "other medical source"), Plaintiff's presentation, and then a lengthy recitation of Plaintiff's subjective complaints. (Tr. 801). Pendleton did not opine as to the severity of Plaintiff's medically determinable mental impairments or how his limitations would affect his ability to function. In essence, there is no

---

[4] *SSR 06-3p was rescinded in March 2017, but was in effect at the time this claim was filed. See* 82 Fed. Reg. 15,263 (Mar. 27, 2017).

opinion from Pendleton that the ALJ needed to consider. And while it may have been better if the ALJ mentioned this progress note, the ALJ was not required to consider each piece of evidence in the record. *See McMahon*, 583 F. App'x at 891; *Dyer*, 395 F.3d at 1211. In sum, even if the ALJ misstated that Plaintiff did not seek mental health therapy and erred in not considering Pendleton's February 2020 progress note, these errors are harmless because Pendleton did not render any opinion on the severity of a medically determinable impairment or any functional limitations stemming from this impairment, the two areas permitted as an "other medical source."

### C.    Appeals Council Review

Plaintiff argues that the Appeals Council erred by failing to evaluate evidence submitted to it from LMHC Pendleton.[5]  (Doc. 23, p. 42). The Commissioner claims that this evidence is not chronologically relevant and, even if it is, the evidence would not change the outcome of the decision and therefore, the Appeals Council committed no error. (Doc. 23, p. 46-47).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015)

---

[5] Plaintiff submitted other evidence to the Appeals Council, but only cited Pendleton's May 25 letter, and raised no argument as to this other evidence. (Doc. 23, p. 42-45).

(quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007)). Under new regulations effective in 2017,[6] the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5). New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). The new regulation added an additional requirement that the Appeals Council "will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 416.1435…." 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b).

The Appeals Council need not give a detailed explanation or further address each piece of new evidence individually. *Hargress*, 883 F.3d at 1309 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)). If the ALJ's decision is contrary to the weight of the evidence – including the new evidence – then the Appeals Council must grant the petition for review. *Id.*

---

[6] In 2016, 20 C.F.R. § 416.1470(a)(5) was amended, effective January 17, 2017, but with compliance not required until May 1, 2017. *See* 81 Fed. Reg. 90987, 90996 (Dec. 16, 2016). So the regulations went into effect before Plaintiff submitted the additional evidence and before the Appeals Council issued its decision.

Before reaching the substance of the evidence submitted to the Appeals Council, Plaintiff raises some procedural arguments. First, Plaintiff claims that if the Appeals Council determined the evidence did not relate back then it had to explain why it did not accept the additional evidence and advise Plaintiff of his right to file a new application, citing 20 C.F.R. § 404.970(c). (Doc. 23, p. 43). Second, Plaintiff argues that it is unclear whether the Appeals Council ever saw this new evidence because it was not listed as evidence it considered. (Doc. 23, p. 43). In the Notice of Appeals Council Action, the Appeals Council specifically addressed the evidence submitted to it. (Tr. 2).

> You submitted 2 pages from T. Pendleton, LMHC dated February 6, 2020. This evidence is not new because it is a copy of Exhibit(s) 16F. We did not exhibit this evidence.
>
> You also submitted 2 pages from Akumin dated March 30, 2020, and 7 pages of records from T. Pendleton, LMHC dated March 5, 2020 to April 28, 2020. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You submitted 6 pages of records from T. Pendleton, LMHC dated May 5, 2020 to May 25, 2020. The Administrative Law Judge decided your case through April 28, 2020. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 28, 2020.
>
> If you want us to consider whether you were disabled after April 28, 2020, you need to apply again. If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use June 19, 2020, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

> You have the right to file a new application at any time, but filing a new application is not the same as filing a civil action. If you disagree with our action and file a new application instead of filing a civil action, you might lose some benefits or not qualify for any benefits. So, if you disagree with our action, you should file a civil action within 60 days as described below.

(Tr. 2). From these statements, it is clear that the Appeals Council considered the evidence submitted from Pendleton, explained it did not relate to the period at issue, and advised Plaintiff of his right to file a new application. (Tr. 2). The Court finds no merit in Plaintiff's procedural arguments.

As to the evidence submitted after the ALJ's April 28, 2020 decision, the Appeals Council acknowledged receipt of 6 pages of records from Pendleton dated May 5, 2020 through May 25, 2020. (Tr. 2). The Appeals Council found that this additional evidence did not relate to the period at issue and therefore it did not affect the decision about whether Plaintiff was disabled beginning on or before April 28, 2020. (Tr. 20). Because the evidence is dated after the April 28 decision, the Court finds that this submission constitutes new evidence and Plaintiff has shown good cause for the submission. Arguably, the evidence is relevant because Pendleton noted that she saw Plaintiff one time when the records were originally requested and had not had time to fully assess him. (Tr. 39). She then saw him ten more times and reached her diagnosis. (Tr. 39). These records arguably appear to relate to the relevant time period, which was on or before the ALJ's decision.

The question then becomes whether a reasonable probability exists that the records from May 5 through May 28, 2020 would change the administrative outcome. *See Phillips v. Soc. Sec. Admin., Comm'r*, 833 F. App'x 308, 321 (11th Cir. 2020) ("However, even assuming these records were chronologically relevant, remand is not required, as the records are not material"). They would not. As stated above, Pendleton is a licensed mental health counselor and not an "acceptable medical source." *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 783 (11th Cir. 2016). As a result, she cannot establish the existence of a medically determinable impairment. *Id.* She can, however, opine as to the severity of an impairment and how an impairment affects an individual's ability to function. *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 872 (11th Cir. 2020); SSR 06-3p.

The progress notes from May 5, 2020 and May 20, 2020 provide the same diagnoses from the February 2020 progress note of depressive disorder due to another medical condition, with major depressive-like episode, but also include a new diagnosis of narcissistic personality disorder. (Tr. 51-52). At both visits, Pendleton found Plaintiff's cognitive functioning as oriented/alert, mood as euthymic, functional status as intact, affect as appropriate, and interpersonal as interactive. (Tr. 51-52). She listed Plaintiff's reported subjective complaints. (Tr. 51-52). She also listed interventions as exploration of coping patterns and exploration of emotions, but included no treatment plan progress. (Tr. 51-52). As in the February

2020 progress note discussed above, in these more recent progress notes Pendleton did not provide an opinion on the severity of Plaintiff's medically determinable impairments nor how his mental impairments affect his ability to function. Pendleton's May 2020 progress notes simply include diagnoses (which as an "other medical source" Pendleton cannot establish a medically determinable impairment), Plaintiff's presentation, and then a lengthy recitation of Plaintiff's subjective complaints. (Tr. 51-52). Pendleton did not opine as to the severity of Plaintiff's medically determinable mental impairments or how these impairments would affect his ability to function. Thus, a reasonable probability does not exist that these documents would not change the administrative outcome.

In addition to the progress notes, Plaintiff submitted a letter dated May 25, 2020 to the Appeals Council from Pendleton, which warrants closer scrutiny. (Tr. 39-41). In the letter, Pendleton explained the treatment history and that she had seen Plaintiff 10 times. (Tr. 39). She also explained that she diagnosed Plaintiff with, "depressive disorder due to a medical condition with major depression with depressive like episodes and narcissistic personality disorder." (Tr. 39). Pendleton then goes into great detail about how Plaintiff fits "all the classic signs of the [narcissistic personality] disorder." (Tr. 39). But Pendleton, as an "other source" cannot establish the existence of a medically determinable impairment, such as narcissistic personality disorder. *See Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x

611, 613 (11th Cir. 2017) (finding that an "other source" cannot establish the existence of a medically determinable impairment). And Plaintiff has not shown that an acceptable medical source diagnosed Plaintiff with narcissistic personality disorder. Indeed, the ALJ found Plaintiff's medically determinable mental impairment were depression and anxiety. (Tr. 20).

Arguably in the letter, Pendleton briefly discusses what possibly could be construed as the severity of Plaintiff's mental impairments and functional limitations. (Tr. 41). Pendleton finds that Plaintiff's "mental illness alone clearly shows that he is incapable of work. His volatility, his complete disrespect for authority and his inflated sense of self-importance would be disastrous in the work arena." (Tr. 41).

First, Pendleton's opinion that based on Plaintiff's mental illness he is incapable of work is an issue reserved to the Commissioner and as a result, the Court disregards it. *See Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1339 (11th Cir. 2021). Second, Pendleton finds three functional limitations that would interfere with work: (1) Plaintiff's volatility; (2) his complete disrespect for authority; and (3) his inflated sense of self-importance. (Tr. 41). But earlier in the letter when describing all the elements of a narcissistic personality disorder, Pendleton supported this diagnosis by finding Plaintiff had volatile and explosive anger, believed in his superiority to his bosses, and had an exaggerated sense of self-

importance. (Tr. 39-40). Thus, these arguable severity or functional limitations opinions all relate to Pendleton's diagnosis of narcissistic personality disorder. Once again, without an acceptable medical source to establish the medically determinable impairment of narcissistic personality disorder, Pendleton's opinion regarding the arguable severity or functional limitations on Plaintiff's ability to function in a work setting as to this impairment is undermined. *See Anteau*, 708 F. App'x at 613. Thus, even if the Appeals Council erred in finding this additional evidence did not relate to the period at issue, the error was harmless because there was no reasonable probability that this May 25 letter would change the administrative outcome.

### III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 14, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties